MORRIS F. & MABLE W. BAUGHMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baughman v. Commissioner
Docket Nos. 10840-84; 6985-87
United States Tax Court
T.C. Memo 1989-59; 1989 Tax Ct. Memo LEXIS 58; 56 T.C.M. (CCH) 1222; T.C.M. (RIA) 89059; February 7, 1989
John O. Jones, Morris F. Baughman and Mable W. Baughman, for the petitioners. [1]
Steve W. Brower, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in statutory notices of deficiency dated March 15, 1984, and February 6, 1987, determined *60 deficiencies and additions to petitioners' Federal income taxes as follows: [2]
Year
Deficiency
Sec. 6653(a)(1) [3] Addition
1980
$ 1,382.00
--  1982
1,014.00 * $ 51.00
The issues for our consideration involve petitioners' investment in franchises for clinics to stop smoking. [4] We must decide whether: (1) Petitioners may deduct losses attributable to the clinic operations; (2) indebtedness used to finance the transactions is includable in petitioners' bases *61 for their partnership interests; (3) petitioners were at risk, within the meaning of section 465, with respect to the indebtedness; (4) petitioners are liable for the addition for negligence; and (5) petitioners are liable from the increased interest rate on tax motivated transactions under section 6621(c), I.R.C. 1986, for taxable year 1982. FINDINGS OF FACT Petitioners resided in Dallas, Texas, on the dates of the filing of the petitions herein. The stipulated facts and exhibits are incorporated herein by this reference. Petitioner [5] Morris Baughman is a certified public accountant. Prior to the investments at issue in this case, he had no experience in the operation of weight or smoking control clinics. In late 1980 and 1981, petitioner, by means of similar payments and *62 terms, became involved in partnerships formed for the purpose of operating smoking and weight control clinics in the Houston, Texas, area. These were operated by license under the name of Medi-Health Systems of America, Inc. (Medi-Health). In late December 1980, Morris Baughman became the general partner of the newly formed partnership, Gulf Coast Centers, Ltd. (Gulf Coast). In December 1981, Morris Baughman became the general partner of the newly formed partnership, Glendon Investments, Ltd. (Glendon). On December 31, 1980, a license agreement was entered into between Gulf Coast and Medi-Health Systems of America, Inc. Morris Baughman, as general partner of Gulf Coast, executed two $ 720,000 promissory notes payable to Medi-Health Systems of America, Inc. One note was executed on December 31, 1980, and one note on March 1, 1981. These notes are due in 20 years with 9 percent stated interest. Interest equal to 30 percent of any cash flow from the partnerships is to be paid on the notes. Gulf Coast also paid Medi-Health $ 96,000 cash on December 31, 1980, and March 1, 1981 under *63 the license agreement. Gulf Coast obtained this cash from limited partners' contributions. The license agreement also provides that petitioner, for Gulf Coast, will execute a similar note for $ 720,000 in 1996. Pursuant to the Gulf Coast partnership agreement executed in December 1980, the limited partners were to sign two promissory notes payable to the partnership. The notes were dated December 31, 1980 and March 1, 1981. Any unpaid interest and principal were due in 20 years. The stated dollar amount of the notes signed by the limited partners equaled the dollar amount of the two promissory notes signed by Morris Baughman as general partner. The limited partners also made cash contributions. Gulf Coast operated no clinic or any other trade or business in 1980. The first clinic operated by Gulf Coast began operation in November 1981. In March 1981, some limited partners of Gulf Coast erroneously signed promissory notes payable to Medi-Health, instead of to Gulf Coast. Morris Baughman did not become aware that the notes were payable to the wrong party until 1983, when respondent's agent brought it to petitioners' attention. Glendon was operated and financed in the same *64 manner as Gulf Coast. Petitioner, as general partner, signed notes payable to Medi-Health for $ 1,005,000 in 1981 and 1982 and the limited partners signed notes payable to the partnership. The limited partners also made cash contributions. Glendon operated no clinic or any other trade or business in 1981. No income was generated by Glendon until late 1982. Petitioner did not sell any of the limited partnership units, and does not know any of the limited partners. The interests were sold, through a prospectus, by Venita Van Caspel, a financial planner. She recommended the partnerships as tax sheltered investments. Apparently, the limited partners would fill out all of the required papers and notes (offeree questionnaire, promissory notes, and contribution), which would be sent to petitioner. The limited partners apparently signed blank promissory notes, and the signatures were notarized and blanks filled-in at a later time. Ms. Van Caspel was paid a commission equal to 20 percent of the cash contributed to the partnerships. Petitioner did not prepare the prospectuses for the partnerships. The partnerships paid petitioner approximately $ 19,000 for each partnership as an organization *65 fee. Collectively, the partnerships operated three clinics, one by Glendon and two by Gulf Coast. They were in business for periods lasting from 1 year to 21 months. The partnerships never showed a positive cash flow, and the clinics subsequently closed because they were not generating enough income to sustain the business. Petitioner, as general partner of Gulf Coast and Glendon, did not investigate the value of the license fee charged by Medi-Health Systems of America, Inc. Medi-Health purchased the right to this license in 1980 or 1981 for approximately $ 80,000 to $ 90,000. Petitioner did not conduct surveys or market studies in connection with the clinics. Medi-Health did not investigate petitioner's ability to pay any of the four notes. The stated principal and interest due on the four notes will total in excess of $ 18 million at maturity. Petitioner did not personally know or meet any of the limited partners, but relied solely on their questionnaires in determining their ability to pay the notes to the partnerships. Petitioner made no capital investment in either partnership. Gulf Coast used the accrual method of accounting for Federal tax purposes. The 1980 partnership *66 return for Gulf Coast reflected a license fee deduction based on the $ 720,000 promissory note and $ 96,000 cash the partnership gave Medi-Health. It indicated Morris Baughman was entitled to claim a flow-through loss of $ 8,160. [6]
Glendon used the accrual method of accounting for Federal tax purposes. The 1982 partnership return for Glendon reflected a license fee deduction based on the $ 1,005,000 promissory note the partnership gave to Medi-Health. OPINION Section 1253(d) governs the deductibility of payments on account of a transfer of a franchise. If the transfer is not treated as a sale or exchange, such amounts may be deducted in the year payment is made, if payment is one of a series of approximately equal payments, payable over more than 10 taxable years, and not contingent on use, productivity or disposition. Sec. 1253(d)(2)(B)(ii). In addition, deductibility of such payments is conditioned on meeting the requirements of section 162(a). Herrick v. Commissioner,85 T.C. 237, 266 (1985). *67 Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Thus, unless Gulf Coast or Glendon conducted a trade or business in 1980 or 1981, respectively, no license fee deduction is allowable. [7]
Gulf Coast was formed in late December 1980 and executed a license agreement with Medi-Health on December 31, 1980. No clinic or any other trade or business was operated by Gulf Coast in 1980. The first clinic operated by Gulf Coast began operation in November 1981. Glendon was formed in late December 1981 and operated no clinic or any other trade or business in 1981. The 1980 partnership return of Gulf Coast claimed only one expense, the license fee (or as described in Exhibit 3-C, the franchise fee). *68 Jackson v. Commissioner,86 T.C. 492, 515 (1986), affd.    F.2d    (10th Cir. 1989), held that a license fee was not deductible under section 1253(d)(2) stating "Merely acquiring a license to distribute a product within a territory does not place a taxpayer in the trade or business of distributing that product." See also Herrick v. Commissioner, supra at 266. There was no activity but the acquisition of the license for the taxable years involved. Thus, because the partnerships were not yet engaged in business until the year after acquiring licenses, no business deduction is allowable. In addition, section 195, which is effective for amounts paid after July 29, 1980, states in pertinent part: START-UP EXPENDITURES. (a) ELECTION TO AMORTIZE. -- Start-up expenditures may, at the election of the taxpayer, be treated as deferred expenses. Such deferred expenses shall be allowed as a deduction ratably over such period of not less that 60 months as may be *69 selected by the taxpayer (beginning with the month in which the business begins). (b) START-UP EXPENDITURES. -- For purposes of this section, the term "start-up expenditure" means any amount -- (1) paid or incurred in connection with -- (A) investigating the creation or acquisition of an active trade or business, or (B) creating an active trade or business, and (2) which, if paid or incurred in connection with the expansion of an existing trade or business (in the same field as the trade or business referred to in paragraph (1)), would be allowable as a deduction for the taxable year in which paid or incurred. Therefore, under section 195 no start-up expenditures are deductible until the "business begins." Because the partnership businesses did not begin during 1980 or 1981, respectively, the year in which the deductions in issue were claimed, the license fees are not deductible. A disallowance based upon start-up costs is not applicable for the 1982 taxable year and respondent advances an additional ground for disallowance of the claimed deductions for that year. The additional *70 ground is equally applicable to 1980 (and 1981). Although notes or other property may constitute payment under section 1253(d)(2), [8] there must be economic substance supporting the existence and stated value of the note to constitute payment. Driggs v. Commissioner,87 T.C. 759, 773 (1986); Jackson v. Commissioner, supra.See also Hagler v. Commissioner,86 T.C. 598 (1986). In this case, despite the "recourse" label affixed by the parties, we find that the notes were not actually collectable unless the partnerships made a profit. In addition, petitioners have failed to prove that the fair-market value of the licenses approximated (or even came close) to the amount of the notes. In forming the partnerships and executing the license agreements and promissory notes, the parties exhibited *71 a lack of concern about the four notes signed by Morris Baughman as general partner. Petitioner's testimony reflects this lack of concern in the formation of the partnerships and his signing the four promissory notes. The $ 720,000 note was more than petitioner's net worth, but Medi-Health did not check into his ability to pay before accepting the notes. Petitioner was seemingly unaware of his potential liability on these four notes and when advised at the trial that he would owe more than $ 18 million, he admitted he could not satisfy the stated obligations. Morris Baughman did not know whether the value of the license fee was fair and merely accepted the value Medi-Health placed on the license fees and materials. Petitioner was not aware of any market survey done to determine whether the Houston market was adequate to financially support these clinics. There was no concern about Morris Baughman's net worth when he signed the four promissory notes. Rodney Williams, one of the two shareholders of Medi-Health, did not know the balance of the notes at maturity. In addition, the security for the notes, the franchises, was worth substantially less than the payments due under the *72 agreement. Williams obtained the rights to the licenses for $ 80,000 or $ 90,000 in 1980 or 1981. The partnerships agreed to pay license fees exceeding 20 times that amount. It seems unlikely that these rights had appreciated to the extent claimed. Moreover, petitioner has not met his burden of showing that the license had a value that was as high as claimed. The partnerships were formed with a lack of concern about the realities of the transaction. Morris Baughman, in determining whether the limited partners could afford to invest in the partnerships, relied solely upon the offeree questionnaires and he knew nothing about the limited partners' actual ability to pay the obligations in question. If the promissory notes reflected genuine indebtedness one would have been more concerned about the limited partners' ability to pay. By the same token several limited partners of Gulf Coast signed the wrong notes (payable to Medi-Health instead of Gulf Coast) and Morris Baughman did not become aware of this until respondent's agent noticed it in 1983. Dr. Norman Hines, a limited partner in Gulf Coast, also had a lack of concern about the partnership's economic realities. Dr. Hines' *73 main concern was a tax deduction and he was told the partnership business would "take care of" the notes. Dr. Hines signed blank papers and notes in becoming a limited partner. While the execution of the agreements and notes reflect they were witnessed by a notary, Dr. Hines testified they were not. The lack of concern by all the parties is indicative that the promissory notes were without substance and would only be paid if the partnerships made a profit. The notes given in exchange for the licenses bore no reasonable relation to the licenses' value, and the true character of the notes is, at best, contingent. We therefore find that the notes do not constitute genuine indebtedness and are not sufficient to support a loss deduction. Driggs v. Commissioner, supra;Jackson v. Commissioner, supra.Moreover, because the partnership's notes are not to be treated as bona fide debt for Federal tax purposes, they do not constitute "borrowed amounts" for which petitioner is at risk. See sec. 465(a), (b)(1); Waddell v. Commissioner,86 T.C. 848, 914 (1986), affd. 841 F.2d 264 (9th Cir. 1988). We next consider the addition *74 to tax for negligence under section 6653(a)(1) and (2). Respondent's determination that the entire deficiency for 1982 was due to negligence is presumptively correct. Petitioners bear the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Leroy Jewelry Co. v. Commissioner,36 T.C. 443, 445 (1961); Rule 142(a). We have held that the losses claimed by petitioners on their 1982 tax return are not allowable. The record reflects Morris Baughman did not use reasonable care in becoming involved as general partner of Gulf Coast and Glendon and in claiming deductions based thereon. Petitioners have failed to rebut the presumption of correctness that attaches to respondent's determination. Thus, respondent's determination on this issue is sustained. The final issue concerns the additional interest on tax motivated transactions under section 6621(c). Interest equal to 120 percent of the statutory rate will be charged with respect to substantial underpayments attributable to tax motivated transactions. Sec. 6621(c)(1). To be substantial, the underpayment must exceed $ 1,000. Sec. 6621(c)(2). A tax motivated transaction *75 includes any one of five enumerated transactions. These include, among others, losses disallowed by reason of section 465(a). Sec. 6621(c)(3)(A)(ii). We have held that the promissory notes were not genuine indebtedness, and did not constitute an amount at risk, because they were, at best, contingent, and the payments greatly exceeded the value of the license. Therefore, petitioner could not have been "at risk" for these amounts, ab initio, because there was no cash contributed or other "borrowed amounts." See sec. 465(a), (b)(1). Under these circumstances, section 6621(c) applies. To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. Attorney Jones failed or omitted to file an opening brief for petitioners. By order dated Aug. 4, 1988, we granted petitioners' motion to replace Jones as counsel and permitted them to file a brief pro se in response to respondent's opening brief.↩
2. By amendments to his answers, respondent sought to increase the deficiencies for 1980 and 1982 to $ 1,525.00 and $ 1,809.00, respectively, and the sec. 6653(a)(1)↩ addition for 1982 to $ 90.45. These cases were consolidated for trial, briefing and opinion. 3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All rule references are to the Tax Court's Rules of Practice and Procedure. For taxable year 1982, the $ 51 addition was determined pursuant to sec. 6653(a)(1), and the 50 percent of the interest addition pursuant to sec. 6653(a)(2). * Plus 50-percent of the interest on the deficiency↩
4. While petitioners' 1981 tax year is not directly covered by this opinion, petitioners have another docketed case (docket No. 2272-87) involving their 1981 tax year. The parties have agreed to be bound, in the 1981 case, on both partnership issues in these consolidated cases. Respondent contends that his arguments are equally applicable to Glendon Investments for 1981.↩
5. Petitioner, when referred to in the singular, refers only to petitioner Morris Baughman.↩
6. Petitioners erroneously claimed a $ 9,120 flow-through loss from Gulf Coast Centers, Ltd., on their 1980 tax return.↩
7. We assume for purposes of this discussion, but do not hold, that the promissory notes in this case would constitute "payment" within the meaning of sec. 1253(d)(2)(B). See Jackson v. Commissioner,86 T.C. 492, 518-521 (1986), affd.    F.2d    (10th Cir. 1989)↩.
8. If the four notes signed by Morris Baughman as general partner of the two partnerships do not reflect genuine indebtedness, then there are no partnership liabilities. Consequently, absent a capital contribution, he would have a zero basis in his partnership interest and no loss deduction would be allowable. See secs. 752, 722, 704(d).↩